```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                     EASTERN DIVISION

KATHALEEN COOLEY,                )
                                 )
             Plaintiff,          )
                                 )
    v.                           )    No.  09 C 2109
                                 )
BOARD OF EDUCATION OF THE CITY   )
OF CHICAGO, et al., etc.,        )
                                 )
             Defendants.         )
```

MEMORANDUM OPINION AND ORDER

Kathleen Cooley ("Cooley") has sued her former employer, the Board of Education of the City of Chicago ("Board"), and Principal Carlos Azcoitia ("Azcoitia") at the school in which she worked, advancing claims of (1) discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII," 42 U.S.C. §§2000e to 2000e-17) on Board's part, (2) interference and retaliation in violation of the Family and Medical Leave Act ("FMLA," 29 U.S.C. §§2601 to 2654) on the part of both Board and Azcoitia and (3) deprivation of equal protection in violation of 42 U.S.C. §1983 ("Section 1983") on the part of both Board and Azcoitia. Those federal claims have been coupled with an Illinois state law claim against Azcoitia under the supplemental jurisdiction provisions of 29 U.S.C. §1367, charging Azcoitia with tortious interference with contract.

Board and Azcoitia have jointly moved for partial summary judgment under Fed. R. Civ. P. ("Rule") 56 on Cooley's FMLA

claims against Board and Azcoitia, her Section 1983 claim against Board and her tortious interference claim against Azcoitia.[1] For the reasons stated here, that Rule 56 motion is granted in part and denied in part.

**Summary Judgment Standard**

Every Rule 56 movant bears the burden of establishing[2] the absence of any genuine issue of material fact (<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986)). For that purpose courts consider the evidentiary record in the light most favorable to nonmovants and draw all reasonable inferences in their favor (<u>Lesch v. Crown Cork & Seal Co.</u>, 282 F.3d 467, 471 (7th Cir. 2002)). But a nonmovant must produce more than "a mere scintilla of evidence" to support the position that a genuine issue of material fact exists (<u>Wheeler v. Lawson</u>, 539 F.3d 629, 634 (7th Cir. 2008)) and "must come forward with specific facts demonstrating that there is a genuine issue for trial" (<u>id</u>.).

Ultimately summary judgment is warranted only if a

---

[1] No discussion of Cooley's Title VII claims is needed here. Defendants have not brought a Rule 56 motion as to her Title VII discrimination claim, and she has voluntarily dismissed her Title VII retaliation claim that defendants' motion had also targeted (C. Mem. 2).

[2] At the summary judgment stage, of course, Cooley need not "establish" or "show" or "prove" anything, but must merely demonstrate that a genuine issue of material fact exists. This opinion employs those terms only because the cited cases use that terminology, but it imposes on Cooley the lesser burden described in this footnote.

reasonable jury could not return a verdict for the nonmovant (<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). What follows is a summary of the relevant facts,[3] viewed of course in the light most favorable to nonmovant Cooley.

**Factual Background**

Cooley was employed as a probationary counselor at Community Links High School ("Community Links"), a Chicago Public School, during the 2005-06 school year (D. St. ¶¶1,9). Azcoitia was the principal at Community Links and was Cooley's supervisor during that school year (<u>id</u>. ¶10).

Cooley learned she was pregnant in October 2005 (C. St. ¶13). Upon returning from winter break in January 2006,[4] she informed Azcoitia and other co-workers of her pregnancy (id. ¶13). Then on February 21 Cooley spoke to Azcoitia for the first time about her plan to use maternity leave through the first 1-1/2 months of the next school year (C. St. ¶14).

According to Cooley, Azcoitia looked shocked by that proposal (<u>id</u>.). Thereafter Azcoitia made it harder for Cooley to do her job by withholding administrative support with student

---

[3] This District Court's LR 56.1 requires parties to submit evidentiary statements and responses to such statements to highlight which facts are disputed and which facts are agreed upon. This opinion cites to Cooley's LR 56.1 statement as "C. St. ¶ --" and to defendants' LR 56.1 statement as "D. St. ¶--."

[4] Because virtually all other relevant events also took place during 2006, all further dates during that year will omit the 2006 reference.

3

discipline and by failing to provide her with necessary feedback and information (id. ¶18).

On March 3 Azcoitia told Cooley he was worried he might have to cut a position the following year, and when asked he said if he had to do so he would eliminate a teaching position and not a counseling position (C. St. ¶19). On March 8, however, Azcoitia asked Cooley when her maternity leave would end and told her he was probably going to have to cut her position for budgetary reasons (id. ¶21).

On March 17 Azcoitia submitted his decision to non-renew Cooley's employment for the following school year (D. St. ¶12). On April 26 Board approved that non-renewal (id. ¶13). Before the end of the then-current school year, though, Cooley received a positive performance rating from Azcoitia (id. ¶26).

On May 4 Cooley requested a leave of absence from May 30 to the end of the school year, June 16, to deal with complications from her pregnancy (id. ¶17). Board's Bureau of Employee Health Services granted Cooley's request for leave on May 12. On October 6 Cooley filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), and she amended the charge on October 19, 2007 (id. ¶24).

**Interference and Retaliation under FMLA**

Cooley claims that defendants unlawfully interfered with her exercise of rights under FMLA (29 U.S.C. §2615(a)(1)) and

4

retaliated against her for the exercise of those rights (29 U.S.C. §2615(a)(2)). Defendants argue that they did not interfere with Cooley's rights because she received all of the leave she had requested when Board granted her a leave of absence on May 12 (D. Mem. 10). Defendants also point out that Cooley applied for her leave of absence after she learned of her non-renewal, so that the non-renewal cannot have interfered with her exercise of her rights (D. Mem. 11). Similarly, defendants suggest that they did not retaliate against Cooley under either the direct or indirect method of proving retaliation because her receipt of the only FMLA leave she requested meant that they did not take any adverse action against her (D. R. Mem. 3).

That whole set of arguments misses the point entirely. It must be remembered that the FMLA leave at issue in Cooley's claims is the expected maternity leave that she first posed to Azcoitia after the winter break--a leave that would have carried from mid-summer through the beginning of the next school year. Cooley contends that Azcoitia's initial reaction, combined with his later actions and Cooley's non-renewal, interfered with her ability to take her maternity leave (C. Mem. 3-4). For this reason alone, Cooley has preserved a genuine issue of material fact as to her FMLA interference and retaliation claims.

### Municipal Liability under Section 1983

As for Cooley's Section 1983 claims, Board contends that

Monell v. Dep't of Soc. Servs., 436 U.S. 658, 496 (1978) insulates it from liability. Under Monell a plaintiff seeking to hold a municipality responsible under Section 1983 must prove that the unconstitutional action that serves as the basis for liability was taken pursuant to (Kujawski v. Bd. of Comm'rs of Bartholomew County, Ind., 183 F.3d 734, 737 (7th Cir. 1999)):

> an express policy causing the loss, a widespread practice constituting custom or usage that caused the loss, or causation of loss by a person with final policymaking authority.

To that end a district judge must consider both state law and customary practice as evidence of policymaking authority (id.)(internal quotation marks omitted and emphasis in original):

> Reviewing the relevant legal materials, including state and local positive law, as well as custom or usage having the force of law, the trial judge must identify those officials or government bodies who speak with final policymaking authority.

Defendants seek to rest their argument that Azcoitia did not fit that description on their view of state law. At first blush that seems persuasive, for our Court of Appeals in two similar cases has focused on state law to find no basis for a school board's Monell-grounded liability based on a school principal's decision. Thus Darchak v. City of Chi. Bd. of Educ., 580 F.3d 622, 629 (7th Cir. 2009) followed its holding that "Illinois law clearly assigns responsibility for personnel decisions to the Board, not to individual principals" with a determination that the plaintiff there had "failed to present evidence of [the

principal's] final authority over the nonrenewal" (id.). And in an earlier decision cited by Darchak, the plaintiff "provide[d] no basis for concluding that any of the[ ] defendant school officials...is a final policymaker" (Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84, 133 F.3d 1054, 1061 (7th Cir. 1998)).

While the state law at issue is the same here as in Darchak and Duda, the facts are totally different. Cooley has put forward ample evidence of far more than a "widespread practice"--indeed, of a universal "custom or usage"--that expressly gave Azcoitia the final say as to Cooley's non-renewal. That could not have been made more plain than in the testimony by defendants' own Rule 30(b)(6) witness, Board's chief labor relations officer (C. Mem. Ex. A at 3-4):

> Q. What are the processes for determining whether the teacher will be nonrenewed or renewed?
> A. That is strictly the decision of the principal at the local school.
> Q. Does anyone else have any say as to the decision of the principal of the local school?
> A. No, the principal of the local school has that authority.
>
>      \*   \*   \*
>
> Q. At this point in time does your office have any involvement in reviewing the reasons that are indicated by the principal for nonrenewal?
> A. No.
> Q. That's strictly up to the principal?
> A. It is up to the principal.
> Q. That's always been the case that --
> A. Principals have the right to make nonrenewal decisions.

7

That testimony provides uncontroverted evidence that Board had the invariable custom and usage of vesting the decisional authority in principals to make renewal decisions as to probationary counselors. That unequivocal evidence, coupled with relevant state law, compels the conclusion that Azcoitia's final decision imposes <u>Monell</u>-based liability on Board under Section 1983.

**Tortious Interference with Contract under State Law**

Defendants also move for summary judgment on Cooley's state law tortious interference claim against Azcoitia. Defendants first seek to invoke two affirmative defenses under the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Immunity Act," 745 ILCS 10/1-101 to /10-101): (1) that the claim is time-barred and (2) that Azcoitia is immune from liability in any event (D. Mem. 11, 14). Before addressing the merits of either contention, Cooley points out that neither was asserted in defendants' Answer or Amended Answer, as is required by Rule 8(c) (C. Mem. 9). Defendants' only reply is to ask this Court to allow the belated assertion of such defenses--more than 18 months after both the Answer and Amended Answer were filed (D. R. Mem. 5 n.1).

This Court declines to do so. If there was indeed a limitations problem with the claim, that would have been apparent from day one. And the Immunity Act should be at the top of the

8

mental checklist of counsel who represent local governments and their employees. It is difficult to think of anything more prejudicial than waiting until discovery has been closed and a summary judgment motion is filed to sandbag the adversary with statute-of-limitations and immunity-from-liability defenses that were plainly knowable far earlier. In sum, those purported defenses have been forfeited.

With that threshold issue out of the way, though, defendants do significantly better in addressing the merits of the tortious-interference claim. To succeed on that theory in the employment context in Illinois, plaintiff must prove (HPI Health Care Servs. Inc. v. Mt. Vernon Hosp., Inc., 131 Ill.2d 145, 154, 545 N.E.2d 672, 676 (1989)(internal quotation marks omitted)):

> (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages.

Defendants contend that Cooley fails the first requirement because she has no contract for continued employment with Board (D. Mem. 13). Cooley responds by quoting language from the collective bargaining agreement between the Chicago Teachers Union and Board (C. Mem. 7). In relevant part that provision states that a probationary teacher (D. Mem. Ex. C at §23A-3.2):

> shall receive written notice at least thirty (30) calendar days before the end of the school year as to whether the teacher will be reappointed for the following year....A

9

teacher who does not receive such notice shall be deemed
reappointed for the following school year.

But that language confirms only that a probationary teacher cannot presume renewal each year and does not have a contract for continued employment for the next school year. Such cases as <u>Levitt v. Gorris</u>, 167 Ill.App.3d 89, 90-92, 520 N.E.2d 1169, 1170-72 (1st Dist. 1988) confirm that probationary governmental employees generally do not satisfy the first prong of the tortious interference test. Because Cooley flunks in those terms, her tortious interference claim must be and is dismissed.

## Conclusion

With no genuine issue of material fact having been identified on certain of Cooley's claims, her Title VII retaliation claim against Board and her state law tortious interference claim against Azcoitia are dismissed. Cooley may, however, proceed with her Title VII discrimination claim against Board, her FMLA interference and retaliation claims against Board and Azcoitia and her Section 1983 claim against Azcoitia and Board. Finally, a status hearing is set for 9 a.m. January 31, 2011 to discuss the future course of this litigation.

_____
Milton I. Shadur
Senior United States District Judge

Date: January 25, 2011